**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| CenterPoint Energy Resources Corp. d/b/a CenterPoint Energy Minnesota Gas,<br><br>Plaintiff,<br><br>v.<br><br>Gas Workers Union, Local No. 340, affiliated with the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO,<br><br>Union. | Court File No. _____<br><br><br>**COMPLAINT** |

## INTRODUCTION

1.  Plaintiff CenterPoint Energy Resources Corp. d/b/a CenterPoint Energy Minnesota Gas, a Delaware corporation ("CenterPoint"), brings this action to vacate an arbitration award issued on September 15, 2016, involving the above-captioned parties.

2.  The arbitration involved a grievance filed by Gas Workers Union, Local No. 340, affiliated with the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO ("the Union") on September 14, 2015.

3.  The Union challenged whether CenterPoint's termination of Mark Ness, an employee represented by the Union, was for just cause pursuant to the parties' collective bargaining agreement.

4. The Arbitrator's Award denied the Union's grievance in part and sustained it in part.

5. By ordering that Mr. Ness be reinstated to employment with CenterPoint without backpay, the Arbitrator exceeded his authority under the express terms of the collective bargaining agreement.

## JURISDICTION

6. This Court has jurisdiction over this matter pursuant to 29 U.S.C. § 151 *et seq.*, Section 301 of the Labor Management Relations Act ("LMRA"), codified at 29 U.S.C. § 185, Section 10 of the Federal Arbitration Act ("FAA"), codified at 9 U.S.C. § 10, and 28 U.S.C. § 1331.

7. Venue is proper in the United States District Court for the District of Minnesota under 29 U.S.C. § 185, 9 U.S.C. § 10, and 28 U.S.C. § 1391.

## PARTIES

8. CenterPoint is a domestic energy delivery company that includes electric transmission and distribution, natural gas distribution, competitive natural gas sales and services, and interstate pipelines and field services operations.

9. CenterPoint's headquarters are located at 1111 Louisiana Street, Houston, TX 77002.

10. CenterPoint is an employer engaged in commerce in the District of Minnesota within the meaning of the National Labor Relations Act ("NLRA").

11. The Union represents employees in a bargaining unit of CenterPoint and is a "labor organization" within the meaning of the LMRA.

12. The Union's offices are located at 312 Central Avenue S.E., #592 Minneapolis, MN 55414.

## STATUTORY FRAMEWORK

13. Labor relations between employers and labor organizations, including CenterPoint and the Union, are governed by the NLRA, 29 U.S.C. § 151 *et seq.*, as amended by the LMRA, 29 U.S.C. § 171 *et seq.*

14. Section 301 of the LMRA, 29 U.S.C. § 185, authorizes lawsuits against labor organizations "for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . ."

15. Section 10 of the FAA, 9 U.S.C. § 10, authorizes vacation of arbitrator awards "where the arbitrator[] exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

## FACTUAL BACKGROUND

16. CenterPoint and the Union are parties to a collective bargaining agreement (the "Agreement"). A copy of the current Agreement is attached as Exhibit 1.

17. The current Agreement is effective May 1, 2015 through April 30, 2020. All relevant acts occurred while the prior Agreement was in effect.

18. Article 27 of the Agreement contains a management rights clause that provides as follows:

> Except as stipulated by this Agreement, the Company shall manage the property and business, direct the working forces, and plan and carry out operations. The Company has the right to establish reasonable rules covering employee conduct.

3

19. Article 5 of the Agreement establishes an internal grievance procedure for the resolution of disputes regarding the interpretation or application of the Agreement or the parties' compliance with the Agreement.

20. Article 5 of the Agreement also provides for the arbitration of timely grievances that are not resolved pursuant to the internal grievance procedures set forth in Article 5.

21. Article 26 of the Agreement sets forth the just cause standard by which bargaining unit employees may be disciplined or discharged:

> The Company has the right to employ or promote in accordance with the provisions of this Agreement, to enforce discipline, to ***discharge employees for cause***, including failure to recognize authority, to discharge or discipline new employees with or without cause before they shall have completed their applicable probationary period (such new employees retain the right to file grievances alleging contractual violations). . . .

22. With respect to certain causes for discharge, Article 26 of the Agreement specifically limits the arbitrator's authority to review CenterPoint's decision:

> Without excluding other causes for discharge, the following shall constitute absolute causes from which there shall be ***no appeal*** to negotiation or arbitration between the Company and the Union (***except that the question of whether the employee has been guilty of the facts constituting such absolute causes shall be a negotiable controversy***) namely:
>
> 1. Use of, or being under the influence of, alcohol or non-medical drugs at any time during the work day
> 2. ***Dishonesty***
> 3. ***Neglect of Duty***
> 4. Abuse of Sick Leave

23. Mark Ness was hired as a Service Technician ("Service Tech") by CenterPoint in 1995.

24. As a Service Tech, Mr. Ness' job responsibilities included performing HVAC maintenance and repair services for CenterPoint's customers.

25. Service Techs do not report to a central office. Instead, Service Techs drive a CenterPoint vehicle to a "service area," which is a geographical location wherein they are assigned work at different customer locations.

26. Service Techs are required to keep accurate time records. Service Techs record their time on a CenterPoint-provided computer.

27. Each Service Tech's computer includes a GPS unit that tracks the computer's location via GPS satellites.

28. Each Service Tech's computer transmits its GPS coordinates to CenterPoint's computer server via "mobile data," which is a cellular data link powered by the Verizon 3G Network.

29. As the continuous GPS data is transmitted from each Service Tech's computer to CenterPoint's server, the Service Tech's latest GPS coordinates can be viewed by managers, dispatchers, and union officials by logging into a computer program called "mobile application." This computer program pulls the most-recent GPS coordinates from each Service Tech's computer and displays each Service Tech's current location on a map.

30. In addition, CenterPoint's computer server records the Service Tech's GPS coordinates throughout the day.

31. On July 22, 2015, Mr. Ness' supervisor, Field Operations Supervisor Terry Lefrooth, observed Mr. Ness via CenterPoint's GPS system spending excessive time at a restaurant and in a gas station parking lot when Mr. Ness claimed on his timecard to be working.

32. On August 11, 2015, Mr. Ness was observed via GPS spending approximately one hour and 50 minutes in parks and gas station parking lots when he claimed on his timecard to be working.

33. On August 17, 2015, Mr. Ness was observed via GPS spending approximately two hours and 45 minutes in parks and gas station parking lots when he claimed on his timecard to be working.

34. On August 19, 2015, Mr. Ness was observed via GPS spending approximately one hour and 45 minutes in parks and gas station parking lots when he claimed to be working.

35. On August 20, 2015, CenterPoint questioned Mr. Ness regarding his whereabouts on July 22, August 11, August 17, and August 19. Ness initially claimed he had not been to the locations in question. Later, Mr. Ness admitted that he had been to those locations, but denied having been at the location for the amount of time shown by GPS.

36. CenterPoint tested and confirmed that Mr. Ness' computer and GPS unit were working properly.

37. By misrepresenting his location and wasting time, CenterPoint concluded that Mr. Ness engaged in both "neglect of duty" and "dishonesty" under the Agreement. Thus, on September 14, 2015, CenterPoint terminated Mr. Ness' employment.

38. The Union submitted a formal grievance under the Agreement regarding Mr. Ness' termination on September 14, 2015.

39. The parties were unable to resolve the matter using the Agreement's internal grievance procedures and subsequently submitted the matter to arbitration.

40. The parties selected Richard John Miller (the "Arbitrator") as a neutral arbitrator to resolve the dispute.

41. The parties stipulated that the issue for the Arbitrator to decide was: "1. Did the Company have just cause to discharge the Grievant, Mark Ness, on September 14, 2015?  2.  If not, what is the appropriate remedy?"

42. The arbitration hearing was held on April 8, May 3, May 4, and May 20, 2016, in Minneapolis, Minnesota.

43. On August 10, 2016, the parties submitted their post-hearing briefs to the Arbitrator.

44. On September 15, 2016 the Arbitrator issued a Decision and Award in which he denied the Union's grievance in part and sustained it in part.  A copy of the Arbitrator's Decision and Award is attached as Exhibit 2.

45. The Arbitrator specifically found that CenterPoint had established that Mr. Ness engaged in "dishonesty or neglect of duty on some of the days in question."

46. Despite the Arbitrator's explicit finding that Mr. Ness engaged in "dishonesty or neglect of duty," the Arbitrator ordered that Mr. Ness should be reinstated because he found that "the discharge penalty imposed on Mr. Ness was arbitrary and discriminatory and must be modified to comport with the seriousness, length and scope of his misconduct." The Arbitrator concluded that the "appropriate remedy is reinstatement with no back pay."

## **COUNT ONE**

47. CenterPoint restates and realleges all of the allegations in the preceding paragraphs as if fully incorporated herein.

48. CenterPoint terminated Mr. Ness' employment for engaging in "dishonesty" or "neglect of duty" on July 22, August 11, August 17, and August 19.

49. Article 26 of the parties' Agreement provides that if an employee is alleged to have engaged in "dishonesty" or "neglect of duty," the arbitrator's authority is limited to addressing only "the question of whether the employee has been guilty of the facts constituting [dishonest and/or neglect of duty]."

50. By finding Mr. Ness "[g]uilty of dishonesty or neglect of duty on some of days in question," the Arbitrator concluded that CenterPoint had "absolute cause" for terminating Mr. Ness' employment. Accordingly, the Arbitrator had no authority under the Agreement to order Mr. Ness reinstated.

51. Because the Arbitrator exceeded the scope of his authority and violated the express terms of the parties' Agreement, the Arbitrator's Award should be vacated.

WHEREFORE, CenterPoint respectfully requests that this Court issue an order:

1. Vacating and setting aside the Arbitrator's September 15, 2016 Decision as exceeding the scope of the Arbitrator's authority and/or failing to draw its essence from the parties' Agreement; and

2. Awarding such costs, fees, and other remedies as this Court deems appropriate.

Dated:  October 17, 2016.          FELHABER LARSON

By:   /s/ Gran T. Collins
    Paul J. Zech, #162450
    Grant T. Collins, #0390654

220 South Sixth Street, Suite 2200
Minneapolis, MN  55402-4504
Telephone:  (612) 339-6321
Facsimile:  (612) 338-0535
pzech@felhaber.com
gcollins@felhaber.com

ATTORNEYS FOR PLAINTIFF